## Case No. 11,458.

### PRYOR v. DUNKLE et al.

[2 Wash. C. C. 416.] [1]

Circuit Court, D. Pennsylvania.  Oct. Term, 1809.

#### WILLS—CONSTRUCTION OF DEVISE.

T. P., by his will, gave all the annual income of his estate to his wife, during her widowhood, to be equally divided between her and his son,

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

with instructions to educate his son; but if it should so happen, that his wife should change her condition, then he gave the direction of his son's education to T. S. He afterwards devised a part of his real estate to his son, specifically. At the time of the decease of T. P., he left his wife, who afterwards married, his son, and a grand-daughter, the child of a deceased son. The court held, that T. P. died intestate as to all the estate not specifically devised to his son, the widow having no interest in it after the termination of her widowhood; and that his granddaughter was entitled to a moiety thereof.
[Cited in Smith v. Smith, 93 Mass. (11 Allen) 425.]

Case stated for the opinion of the court, to be considered as a special verdict.

Thomas Pryor, of the city of Philadelphia, made his last will some time in the year 1800, as follows, viz.

"In the name of God, Amen, I, Thomas Pryor, of the city of Philadelphia, being in perfect state of mind, do make this my last will and testament, and as no other was ever made by me, I do give to my lawful wife, Sarah Pryor, (formerly Sarah Parker,) all my annual income, during her, Sarah's widowhood, in all my real estate in the city and county of Philadelphia and district of Southwark, to be equally divided between her and my dear little son Matthew, to whose care I by these presents do enjoin her to be (particular to directions) enjoining her to be careful in giving him as good an education as the country she now lives in can afford him; but should it so happen that my aforesaid wife Sarah should change her condition, I then give the sole direction to my friend Thomas Shinn, of —— township, in East New-Jersey, laying him under the same restrictions as I have done my wife, as to his, Matthew's, education. And as I do now possess five different tracts of land in the county of Westmoreland, which will be seen by the patents now in my possession. I do give to my dear son Matthew, to be solely appropriated to his use, and may be sold by his guardians, and the money lodged in the Bank of the United States, whenever a favourable opportunity for the sale of back lands shall offer, and then to be sold for his use. In witness whereof I do hereunto set my hand, in the presence of us —— (and wrote with my own hand,) I give to my granddaughter, Tacy Pryor, to be paid to her out of the income mentioned, thirty pounds per annum, (the daughter of my son Charles, deceased,) the first payment to be made her in one year after my decease.           Thomas Pryor.
"Andrew Hertzog.
"Pierce Maher."

Thomas Pryor, the devisor, died in 1801. At the time of making his will and of his death, he was seised and possessed. inter alia, of the premises mentioned in the declaration, which are of the value of two thousand dollars and upwards. At the time of the testator's death, he left a widow, Sarah Pryor, now Sarah Miles. an infant son called Matthew, by his said wife Sarah, and a minor grandchild called Tacy Pryor, the lessor of

the plaintiff, the daughter of his son, (by a former wife,) who was called Charles, and who died in the testator's lifetime. After the death of Thomas Pryor, his said will was duly proved, and the execution thereof committed to his said wife Sarah, who likewise took out letters of administration of the personal estate of the said testator. The said Sarah was married to John Miles the younger, of Philadelphia, on the 6th of December, 1802. From the death of Thomas Pryor, to the time of the said last-mentioned marriage, she received the rents and profits of the said testator's real estate, under the will. Subsequently to the said last-mentioned marriage, viz. on the 1st of January, 1803, Thomas Shinn, who is named in the will of the said Thomas Pryor, and John Miles, (the father of the said John Miles the younger,) executed a power of attorney (prout the power); the attorneys named in it have managed the real estate of the said Thomas Pryor, and received the rents and profits, from the time of the last-mentioned marriage. Tacy Pryor, the lessor of the plaintiff, has been duly paid the annuity of thirty pounds, mentioned in the will, as well since as before she became of age, viz. on the —— day of May, 1808.

The question for the opinion of the court is, whether the plaintiff is entitled to recover any and what part of the premises mentioned in the declaration?

Mr. Hopkinson, for plaintiff, contended, that the fee simple of the Philadelphia and Southwark property was not disposed of at all; but merely the income, during the widowhood of Sarah, the wife. Upon her marriage to John Miles, Jun., an intestacy took place with respect to the income also; and then, by the intestate laws of Pennsylvania, the real estate descended equally to Tacy Pryor and Matthew Pryor. Of course, the plaintiff was entitled to recover of the premises mentioned in the declaration, subject however to the widow's right of dower.

Dallas & Rawle, for defendants, argued—First, that the plaintiff was not entitled to recover at all; or if anything, then, secondly, only a fourth part of the estate.

First. The widow took the whole income during widowhood, in trust for herself and Matthew, as tenants in common. Upon her change of condition, the trust was transferred to Shinn, for the same uses. He was substituted as the trustee; but the division of the income remained as before. Upon no other construction, could the devise of the annuity to Tacy be maintained. This is given to her generally; not during the widowhood of Sarah, but for life; and as it is payable "out of the income mentioned," the devise of the income must continue at least during her life, to support it. There is no intention apparent in the will, that he meant to die intestate as to any part of the estate; and it is clear, he meant to give Tacy the annuity of thirty pounds, and no more.

But, secondly. It cannot be supposed, that the father intended the half of the income which he had given to Matthew, and which was essential for the education he was so desirous that he should receive, should depend upon the widowhood of the mother. The probability is, that the father's intention was, that upon the marriage of the widow, Matthew should take her half of the income also; but as this is not expressly devised over to him, it may be said, there is an intestacy as to this half; and if so, it descended in equal parts to Matthew and Tacy, and the plaintiff will then be entitled to one-fourth of the whole.

Edward Tilghman, in reply, cited many cases, to show, that the heir is greatly favoured; and cannot be disinherited, except by plain words, or necessary implication. As to the construction of the will, it seems plain, that no disposition of the Philadelphia property is made, except of the income during widowhood. As to Matthew, what does he take in trust? One-half the wife's estate. What is that? The income during widowhood. On the supposition that the son takes one-half the income during life, the trust estate is greater than the legal estate which is to support it. The legal estate failing, the trust goes with it: no new estate is given to Shinn. Suppose the devise had been to the widow during life, instead of widowhood—could the son take the income after her death? Clearly not. Where a legal estate is granted, and a special trust created, the legal estate will be held sufficient to support it; but where the trust is general, growing out of and depending upon the legal estate, it must fall with the legal estate.

WASHINGTON, Circuit Justice (PETERS, District Judge, absent). Were a plain man, such as the writer of this will most certainly was, called upon to give a construction of it, he would probably be astonished to hear that gentlemen learned in the law had been perplexed by it; and he might seek in vain for those difficulties which great talents could alone discover. He would never think of searching after intentions, beyond the plain meaning of the words used by the testator, and until he discovered some incongruity in the bequests, or some ambiguity in the expressions, he would adhere to the words, and leave it for more skilful interpreters to explore the field of conjecture. Inquiring, as would be natural, what does the testator give? to whom does he give? and for what estate? he would find no difficulty in saying, that he gives the whole annual income of his real estate in the city and county of Philadelphia and district of Southwark—that he gives that estate to his wife, for the use of herself and her son Matthew—and that he gives it, for and during her widowhood, and no longer. But finding that at the close of the will, another person is introduced into

the participation of this bequest, to a certain amount, I think he would find no difficulty in removing this clause to that to which it necessarily belongs; and would then say, that the estate is given to the wife during her widowhood, to dispose of as follows, viz. thirty pounds per annum to Tacy, and the residue of the income to be equally divided between herself and her son Matthew. This construction arises necessarily from the words of the will; and I adopt it as a safe one, because I am satisfied that it cannot disappoint the intention of the testator. The devise to the son and grand-daughter is of parts of an estate given to the wife during her widowhood, and cannot subsist one moment after that estate is defeated by the happening of the contingency which was to terminate it. The devise, in fact, is to all three, in the proportions mentioned, to continue during the widowhood of one of them; and the constituting that one a trustee for the others, cannot vary the case. As to the residue of the first clause of the will, it is plain, Thomas Shinn is not substituted as the trustee of the estate before devised, but solely as the guardian of the son. If he was intended to be a trustee, who would be the cestui que trust? It was contended for the defendant, that the limitation of the devise to the wife was confined to her legal estate, and does not affect the beneficial interest which she took under the will. But it is most obvious, that the testator intended to deprive her of the bequest altogether, upon her second marriage; and he could not well have used more intelligible language, to express such an intention. His object was not only, upon that event, to deprive her of this provision, but to transfer to Mr. Shinn the sole care and direction of his son. But he uses no words which, by any intendment, can be construed to pass the estate to him. If Shinn was constituted a trustee, and the widow forfeited by her marriage her interest in the estate, then an intestacy took place as to a moiety of the income, deducting the thirty pounds given to Tacy; and yet, that the testator did not mean to die intestate, is urged as an argument against the construction contended for by the plaintiff. I presume, however, that the testator thought nothing and knew nothing of the legal consequences of the disposition he had made, in this respect; and the subject of intestacy never occurred to him.

As to the payment to Tacy Pryor of her annuity, becoming due, as was supposed, after her right to it had ceased by the second marriage of Sarah Pryor, this affords no legal objection to her recovery in this action; and upon the whole, I am of opinion that judgment should be given in favour of the lessor of the plaintiff, for one undivided moiety of the lands in the declaration mentioned.